IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DANA EHDE,** individually and on behalf of all others similarly situated,<br><br>_Plaintiff_,<br><br>_v._<br><br>**NEW YORK TRIBECA GROUP LLC**, a New York limited liability company,<br><br>_Defendant._ | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Dana Ehde ("Plaintiff" or "Ehde") brings this Class Action Complaint and Demand for Jury Trial against Defendant New York Tribeca Group LLC, doing business as Tribeca Group ("Defendant" or "Tribeca Group") to stop the Defendant from violating Telephone Consumer Protection Act ("TCPA") by directing the making of telemarketing calls _without consent_ to consumers, including those who specifically opted out of receiving further phone solicitations from the Defendant. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1.      Plaintiff Dana Ehde is a resident of Chalfont, Pennsylvania.

2.      Defendant New York Tribeca Group LLC is a New York limited liability company with its principal place of business in New York City, New York. Defendant Tribeca Group conducts business throughout this District, New York, and the U.S.

**JURISDICTION AND VENUE**

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction and venue is proper since Defendant operates its business in this District and the wrongful conduct giving rise to this case was directed from this District.

**INTRODUCTION**

5.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of*

*Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 144.8 million per day. www.robocallindex.com (last visited August 23, 2023).

10.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.      "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.     Defendant New York Tribeca Group is a New York limited liability company which provides financing solutions to existing businesses throughout the U.S.[3]

14.     Defendant Tribeca Group uses automated systems to send outbound telephonic sales calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the "no solicitation list", soliciting consumers to use Defendant's financial services.

15.     Defendant Tribeca Group made telephonic sales calls or caused telephonic sales calls to be made using spoofed phone numbers which were not

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.nytribecagroup.com/loan-types/

capable of receiving calls or connecting the original call recipient to the Defendant, on whose behalf those telephonic sales calls were placed.

16.     Other consumers have posted complaints online about receiving unsolicited telephonic sales calls and text messages from Defendant Tribeca Group, for instance:

- **"**Cold texted me despite ZERO prior contact with them and no interest in their services. There is no excuse for this kind of predatory practice. Shows they are willing to buy irrelevant, cheap leads with no vetting and no care for how disruptive or unwanted their intrusions are. Tells me I would never want to do business with them even if I did want to borrow capital for my business."[4]

- "Absolutely a scam, they harrass you non stop and try and loan shark new business owners...run!" [5]

- "Why would a 'legitimate' company feel the need to use phone-number-spoofing technology for its outbound calls? This is the same method used by overseas scammers, and is intended to prevent easy reverse-searching. I am highly skeptical of this company and recommend anyone proceed with due caution."[6]

- "if I wanted to do business with a loan shark id stay local and just get it from ronnie giallanzo not some scammer overseas calling me from a call center"[7]

- "These are aggressive loan sharks that will not take no for an answer. I never asked them to contact me and they will not stop. I'm going to report them to the FTC"[8]

---

[4] https://www.google.com/search?q=%22tribeca+group%22+%22sophia
[5] *Id.*
[6] https://www.google.com/search?q=%22tribeca+group%22+%22sophia
[7] *Id.*
[8] *Id.*

- "They make solicitations and when you decline or ask questions they can't answer about cost, they hang up. Repeat experiences."[9]

- "These guys are the worst! I keep asking them to remove me from their call, text and email listing. It's non-stop harassment from these people! I don't want your high interest rate money! Calls all day and night along with text from Phil, Peter, Brandon, and Colin! Next will be reporting you guys for harassment!"[10]

- "I have received so many unsolicited calls from this company I've lost count. Please stop. Also, something is quite odd with the 5 star reviews here. I encourage everyone to search the names used for those reviews. The 1 star reviews are easily verifiable as real business owners. Also, to "New York Tribeca Group"... take a look at Section 399-PP and Section 399-Z of New York State's General Business Law, restricting unsolicited telemarketing calls to a state/city in a state of emergency."[11]

- "I was cold called about getting a loan, which I didn't need. Now I get daily emails asking to set up an appointment to go over things. After multiple emails to ask them to stop and phone calls telling them to stop reaching out to me, it won't stop. Even on the phone calls when I ask them to stop emailing me, they still try to sell. A pest of a company!"[12]

- "There is a guy at this company named ****************** that emails me every single day and minimum of once a day. I also receive hundreds of phone calls a month from this company. I have told the guy to F off many times I have told the guy to stop calling me many times I have emailed the guy to stop calling and e mailing me many times. There is no option to opt out of anything The harassment never ends. I have filed a cease and desist and my next step is to call the **** and file a police report. This is not a business this is some sort of fraud scam spam lie ********. I am not a customer, I have never replied with them, they are simply a house

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

of fraudulent harassing scammer spammers. I do not want an apology I want them to go to jail."[13]

- "This company unlawfully acquires people's contact information and spams them. They call from fake numbers, ignore do not call requests, don't provide unsubscribe options on their emails and have been HARASSING me for months."[14]

- "Please make these people stop calling my firm. I have told them to stop no less than 15 times. Thank you"[15]

- "They call text and email me everyday, won't leave me alone after I have told them not to contact me anymore."[16]

Eric H



04/29/2019

The Tribeca Group (New York, NY) is calling and texting me several times a day and has been for the last two months or so. "Phillip" is asking for "Sergio" allegedly hoping to sell "Sergio" a small business loan. There is no Sergio at this phone number and there never has been. They are also asking for my bank records, which I have not provided. I have NEVER made contact with Tribeca group other than telling them I am not interested in their product, I am not "Sergio", and they should remove me from their call list and contacts list. I don't know if Tribeca is running a scam or has robo calls and texts running wild. Your help in disassociating me from Tribeca Group will be greatly appreciated. My star rating for Tribeca is zero.

Nicholas P



03/27/2019

They call text and email me everyday, won't leave me alone after I have told them not to contact me anymore.

- [17]

[13] https://www.bbb.org/us/ny/new-york/profile/financing-consultants/new-york-tribeca-group-llc-0121-169222/complaints

[14] *Id.*

[15] *Id.*

[16] https://www.bbb.org/us/ny/new-york/profile/financing-consultants/new-york-tribeca-group-llc-0121-169222/customer-reviews

[17] *Id.*



Thomas J Utz Orler 💬 doesn't recommend **New York Tribeca Group**.
8 October 2021 ·

THEY HARRASS YOUR BUSINESS ALL THE TIME, RELENTLESS E MAILS AND PHONE CALLS... REQUESTS TO STOP N OVER DONE.. FOR YEARS THEY BEEN DOING THIS OVER AND OVER AGAIN... MAKE THEM STOP

18

JJ Brown 💬 doesn't recommend **New York Tribeca Group**.
9 June 2020 · 🌐                                        •••

They will cold call you at 7am every single day. They will fake/mask thier phone number, they will ignore requests to be removed. They will hang up when you call to complain.

Why would anyone trust a company that acts like this?

6 months+ of daily harassment from them so far. Everyone should be aware of what these people really do.

19

Elijah Charalampopoulos 💬 doesn't recommend **New York Tribeca Group**.
21 February 2020 · 🌐

Unsolicited calls and text messages. Pretty sure all the positive comments are from people who work there.

20

Yoosof Fazal 💬 doesn't recommend **New York Tribeca Group**.
12 May 2019 · 🌐                                        •••

stop calling me! stop emailing me!

21

17.    Defendant Tribeca Group hires employees to place outbound telephonic sales calls and text messages to leads provided to them by the Defendant. For instance, Defendant posted a job posting for the role of Entry Level Sales Rep to place outbound telemarketing calls and text messages to solicit business:[22]

---

[18] https://www.facebook.com/NewYorkTribecaGroup/reviews/?ref=page_internal
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] https://www.linkedin.com/jobs/view/2987400867/

We supply you with HIGH-QUALITY LEADS – you do not need to generate leads yourself.

Our leads are scrubbed and vetted before they hit your desk. The closing rate is over 50%.

We offer all the training you need to succeed, but candidates with a background in Sales are encouraged to apply.

**We Offer**
- Warm leads distributed via CRM & Dialer
- Training
- Exciting sales environment with a collaborative culture
- Top sales professionals to mentor and guide your growth in the industry
- Access to products and platforms to generate cross sales and increase revenues
- Aggressive commission + bonus, along with monthly incentives. Paid weekly

**Requirements**
- Excellent communication skills
- Proficient in English
- Comfortable on the phone with heavy call volume

18.     Multiple employees of Defendant Tribeca Group have posted reviews online about Defendant's cold calling practices, stating that Defendant provided consumer leads to them for cold calling:

Account Executive (Former Employee) - Wall Street, NY - June 11, 2020

I am a former employee of the company. They have great people working there, the floor has a ton of energy and you actually learn what you need to do for the position unlike some other companies I've worked for in the past. They give you leads so you don't have to generate your own and actually care about their employees. Unfortunately I had to leave because of a medical issue but I highly recommend this company if you're a broker in the MCA industry. They give you the opportunity to make a lot of money, you just need to put the work in.

- [23]

[23] https://www.indeed.com/cmp/New-York-Tribeca-Group/reviews

**Fast-paced, productive work environment with opportunity for growth**

Chief Marketing Officer / Web Developer (Current Employee) - New York, NY - July 9, 2018

Excellent work atmosphere for for any individual with high aspirations. An opportunity for growth in the field. I enjoy being able to constantly improve this company's daily operations and strengthening its industry presence. I enjoy the relaxed work environment, which is stress-free and productive. Respect goes a long way at NYTG, and I love it. I am happy to be the initiator of the open-door policy in the office. I am also happy to have started inbound lead generation services for the company. [24]

19.     To make matters worse, as per Plaintiff's experience, the Defendant continues to place unsolicited calls/text messages even when consumers have instructed them to stop calling/texting.

20.     In response to these calls, Plaintiff Ehde brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF EHDE'S ALLEGATIONS

21.     Plaintiff Ehde is the subscriber and the sole user of the cell phone number ending with 6371.

22.     Plaintiff Ehde has owned her cell phone number for at least 7 years.

23.     Plaintiff Ehde uses her cell phone number for personal and household use only as one would use a residential landline.

24.     In approximately the middle of 2021, Plaintiff Ehde received an unsolicited call from Defendant to her cell phone soliciting business capital loans.

---

[24] *Id.*

25.    The employee stated that they were calling for someone named Andy.

26.    Plaintiff Ehde does not know who Andy is. She believes that Andy could be the previous owner of her cell phone number.

27.    Plaintiff Ehde told he employee that they were calling the wrong number and ended the call.

28.    Despite her clear opt-out request, Plaintiff Ehde received a text message from Defendant to her cell phone on September 22, 2021 at 11:43 AM, from 732-334-3345:



29.     The aforementioned text message clearly states that the Tribeca Group employee was following up with Plaintiff, presumably based on a previous conversation.

30.     Plaintiff Ehde received additional text messages from Defendant to her cell phone on:

- September 27, 2021 at 3:49 PM, from 732-334-3345;
- September 28, 2021 at 12:22 PM, from 732-334-3345;
- September 29, 2021 at 3:42 PM, from 732-334-3345;
- February 2, 2022 at 12:26 PM, from 908-503-6632;
- March 9, 2022 at 11:41 AM, from 732-334-3345;
- March 14, 2022 at 5:25 PM, from 732-334-3345;
- April 19, 2022 at 4:31 PM, from 83-387-8953;
- June 28, 2022 at 12:24 PM, from 732-334-3345;

**Texts from 732-334-3345:**



**Text from 908-503-6632:**



**Text from 833-387-8953:**



31.    In addition to the text messages, Plaintiff Ehde received numerous unsolicited telemarketing phone calls from Defendant to her cell phone soliciting business capital loans.

32.    Plaintiff made additional requests for Defendant to stop calling her cell phone, explaining that the callers were calling the wrong number.

33.    Despite all her stop requests, Plaintiff Ehde received additional calls from Defendant.

34.     For example, Plaintiff Ehde received a call from Defendant to her cell phone from 443-655-8838 on June 1, 2023 at 12:04 PM.

35.     Plaintiff answered this call. An employee asked for Andy, so Plaintiff hung up the phone.

36.     Plaintiff then received another unsolicited call on June 1, 2023 at 7:27 PM from Defendant Tribeca Group, from 443-655-8838.

37.     Plaintiff answered this call. An employee identified the company name as New York Tribeca Group and began a solicitation for a business loan for Andy. Plaintiff told the employee that he had the wrong phone number and ended the call.

38.     On June 5, 2023 at 3:29 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769. This call was not answered.

39.     On June 6, 2023 at 1:07 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769.

40.     Plaintiff Ehde answered this call. An employee began a sales pitch for a business capital loan. In response, Plaintiff hung up the phone.

41.     On June 7, 2023 at 3:21 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769. This call was not answered.

42.     On June 8, 2023 at 1:50 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769. This call was not answered.

43.     On June 9, 2023 at 11:38 AM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769.

44.     Plaintiff Ehde answered this call. An employee identified the company name as New York Tribeca Group and began a solicitation for a business loan for Andy. Plaintiff told him that he had the wrong phone number and ended the call.

45.     On June 14, 2023 at 1:56 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769.

46.     Plaintiff Ehde answered this call. An employee identified the company name as New York Tribeca Group and began a solicitation for a business loan for Andy. Plaintiff interrupted the employee and told him that he had the wrong phone number and ended the call.

47.     On June 15, 2023 at 1:36 PM Plaintiff received an unsolicited call from Defendant Tribeca Group, from 267-817-2769.

48.     Plaintiff Ehde answered this call. An employee identified the company name as Abstract Capital Group and began a solicitation for a business loan. Plaintiff told the employee that she had the wrong phone number and confirmed that the caller actually called from New York Tribeca Group.

49.     Plaintiff Ehde has never solicited a business loan from New York Tribeca Group.

50.     The unauthorized telephonic sales calls and text messages that Plaintiff received from Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

51.     Seeking redress for these injuries, Plaintiff Ehde, on behalf of herself and Class of similarly situated individuals, bring suit under the TCPA.

### CLASS ALLEGATIONS
### Class Treatment Is Appropriate for Plaintiff's TCPA Claims
### Arising From the Defendant's Actions

52.     Plaintiff Ehde brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **<u>Internal Do Not Call Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant texted to their residential telephone line at least two times (2) including at least once after the consumer had communicated their wish to not receive any further calls and/or text messages from the Defendant (3) for substantially the same reason Defendant called and sent text messages to Plaintiff.

53.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Ehde anticipates the need to amend the Class definition following appropriate discovery.

54. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c)     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent

and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Class.

57. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Class and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Ehde. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CLAIM FOR RELIEF
## Telephone Consumer Protection Act
## (Violation of 47 U.S.C. § 227)
## (On Behalf of Plaintiff Ehde and the Internal Do Not Call Class)

58.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

59.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any

failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60. Defendant placed calls and sent text messages to Plaintiff and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls/text messages.

61. The TCPA provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b)    An award of damages and costs;

c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)    Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ehde requests a jury trial.

> **DANA EHDE**, individually and on behalf of all others similarly situated,

DATED this 12th day of October, 2023.

> By: /s/ Stefan Coleman
> Stefan Coleman (FL Bar No. 30188)
> law@stefancoleman.com
> COLEMAN PLLC
> 11 Broadway, Suite 615
> New York, NY 10001
> Telephone: (877) 333-9427
>
> Avi R. Kaufman (FL Bar No. 84382)
> kaufman@kaufmanpa.com
> KAUFMAN P.A.
> 237 South Dixie Highway, Floor 4
> Coral Gables, FL 33133
> Telephone: (305) 469-5881
>
> *Attorneys for Plaintiff and the putative Class*